# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JUSTIN GRANIER (#439048)**                         **CIVIL ACTION NO.**

**VERSUS**                                           **18-901-BAJ-EWD**

**DARREL VANNOY**

## ORDER AND REASONS

Before this Court is the application of Justin Granier ("Petitioner") for a writ of habeas corpus. For the following reasons, an evidentiary hearing is ordered on the timeliness of Claim 1 and Claim 2. For purposes of judicial efficiency, evidence will also be taken on the merits of Claim 1 and Claim 2, although the merits will not be reached on any claim that is not timely.

### I.        Facts and Procedural History

Petitioner was indicted on a charge of second-degree murder in the Twenty-Third Judicial District Court, Ascension Parish, State of Louisiana ("Twenty-Third JDC"). On October 24, 2003, after a trial by jury, Petitioner was found guilty as charged. He was sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence on December 16, 2003. Petitioner applied for and received post-conviction application relief, on the grounds that his counsel failed to timely appeal despite his instruction. After obtaining relief, Petitioner filed a direct appeal with the First Circuit Court of Appeal ("First Circuit"). On December 21, 2007, the First Circuit affirmed Petitioner's conviction and sentence.[1] The Louisiana Supreme Court denied Petitioner's writ application on October 24, 2009.[2]

---

[1] R. Doc. 7-11, pp. 3-15.
[2] R. Doc. 11, p. 106.

On March 26, 2009, Petitioner filed an application for post-conviction relief ("First PCR Application") at the Twenty-Third JDC.[3] He asserted, *inter alia*, that the trial court's jury instructions created confusion which led jurors to believe they could not return a responsive verdict of manslaughter and that he received ineffective assistance due to counsel's failure to object to hearsay testimony which violated Petitioner's rights under the Confrontation Clause.  The trial court entered an order on September 7, 2011 denying Petitioner's First PCR Application.[4] Petitioner attempted to seek a writ with the First Circuit. However, on January 17, 2012, the First Circuit denied Petitioner's writ on the basis that he failed to include pertinent portions of the trial court record. Petitioner did not refile his writ with the First Circuit correcting the deficiencies;[5] however, on February 9, 2012 he did file a petition for a writ of certiorari with the Louisiana Supreme Court. On October 8, 2012, the Louisiana Supreme Court issued an order merely stating, "writ denied."[6]

On June 4, 2013, Petitioner filed a counseled second application for post-conviction relief ("Second PCR Application") at the Twenty-Third JDC.[7] Petitioner re-raised the issue of juror confusion, attaching affidavits from two jurors attesting that they did not believe that manslaughter was a responsive verdict. For the first time, Petitioner also raised the issue of juror bias. Petitioner alleged that he became aware on April 17, 2013, through an interview conducted by Petitioner's investigator, that the son of one juror, Gladys Mobley, ("Juror Mobley") had a previously undisclosed connection to the murder investigation. The trial court dismissed the claim regarding

---

[3] R. Doc. 7-12, pp. 6-69.
[4] R. Doc. 7-15, p.47.
[5] R. Doc. 7-16, p. 2.
[6] *State ex rel. v. Granier*, 98 So.3d 868; 2012-0386 (La. 10/8/12).
[7] R. Doc. 7-16, pp. 65-84.

juror confusion as successive but ordered an evidentiary hearing on Petitioner's claim regarding Juror Mobley.[8]

On or about December 18, 2014, before the evidentiary hearing could be conducted, Juror Mobley died.[9] Because Juror Mobley was unavailable for the evidentiary hearing, Petitioner filed a motion seeking permission to use the investigator's hearsay testimony. On May 18, 2015, the trial court granted Petitioner's request to use hearsay testimony during the hearing, finding the investigator's testimony qualified for exceptions to the hearsay rule found in Louisiana Code of Evidence articles 803 and 804.[10] The state sought a writ with the First Circuit. The First Circuit granted the writ on November 4, 2015, reversing the trial court's ruling on hearsay and remanding for further proceedings.[11] The Louisiana Supreme Court denied Petitioner's writ application on this issue.[12]

An evidentiary hearing was conducted on November 2, 2017.[13] Samuel Mobley, Juror Mobley's son, testified that he worked at the grocery store where the murder was committed for about an hour and was fired;[14] he was questioned by the police about the murder at the grocery store;[15] and both his parents' homes (including Juror Mobley's home) were searched in connection with the murder investigation.[16] Wade Petite ("Petite"), who was Petitioner's trial counsel also testified. During the state's questioning of Petite, the trial court judge became concerned that the state knew during jury selection that Juror Mobley's son had a connection to the murder

---

[8] R. Doc. 7-17, pp. 23-26.
[9] R. Doc. 7-18. p. 22.
[10] R. Doc. 7-18, pp. 41-42.
[11] R. Doc. 7-18, p. 116.
[12] R. Doc. 7-19, p. 37.
[13] R. Doc. 7-19, pp.117-139; R. Doc. 7-20, pp. 1-52.
[14] R. Doc. 7-20, p. 11.
[15] R. Doc. 7-20, pp. 16-17.
[16] R. Doc. 7-20, pp. 17, 19.

investigation.[17] In response to an oral motion by Petitioner's counsel, the trial court ordered the state to produce any statements, reports, search warrants, and voluntary consents to search Samuel Mobley's parents' homes contained in the prosecution's files.[18] The trial court then recessed the hearing.

On December 4, 2017, in compliance with the trial court's order, the state produced Samuel Mobley's application for employment at Delaune's Supermarket. The state also produced handwritten notes documenting that Samuel Mobley was read his rights, Gladys Mobley is his mother's name, and he was recently a suspected shop lifter at Delaune's.[19] On December 11, 2017 the state filed a motion asserting a procedural objection that it was materially prejudiced by the death of Juror Mobley, and that Petitioner's application should be dismissed under Louisiana Code of Criminal Procedure article 930.8(B).[20] On December 12, 2017 the state filed another motion re-asserting their objection to the timeliness of Petitioner's application.[21] The trial court denied both motions at a hearing on January 16, 2018.[22]

Petitioner amended his Second PCR Application on December 14, 2017 to add a claim of prosecutorial misconduct for failing to disclose to Petitioner's trial counsel Samuel Mobley's connection to the murder investigation.[23] The state filed a motion to dismiss the prosecutorial

---

[17] R. Doc. 7-20, pp. 38-51.
[18] R. Doc. 7-20, pp. 40-43
[19] R. Doc. 1-26, pp. 1-5.
[20] R. Doc. 7-20, pp. 57-58. La. C. Cr. P. art. 930.8(B) provides as follows: An application for post-conviction relief which is timely filed, or which is allowed under an exception to the time limitation set forth in Paragraph A of this Article, shall be dismissed upon a showing by the state of prejudice to its ability to respond to, negate, or rebut the allegations of the petition caused by events not under the control of the state which have transpired since the date of original conviction, if the court finds, after a hearing limited to that issue, that the state's ability to respond to, negate, or rebut such allegations has been materially prejudiced thereby.
[21] R. Doc. 7-20, pp. 60-61.
[22] R. Doc 7-20, pp. 103-134.
[23] R. Doc. 7-20, pp. 63-69.

misconduct claim on December 29, 2017.[24] At a hearing on January 16, 2018, the trial court denied the state's motion to dismiss the claim.[25]

On January 19, 2018, the state filed a writ application with the First Circuit, seeking a writ of mandamus commanding the trial court to produce written reasons for judgment and a return date.[26] The First Circuit denied the writ on February 1, 2018.[27] On February 7, 2018, the state filed another writ application contending that the trial court erred when it failed to dismiss Petitioner's Second PCR Application, when it allowed Petitioner to amend his application to assert a claim of prosecutorial misconduct, and because it considered hearsay evidence.[28]

On February 14, 2018, while the state's writ application was pending, the state filed procedural objections to the prosecutorial misconduct claim, citing numerous articles from the Louisiana Code of Civil Procedure.[29] On March 7, 2018, the trial court denied the state's procedural objections.[30] The state then filed another writ application with the First Circuit, arguing that the trial court erred in allowing Petitioner's prosecutorial misconduct claim to proceed and because it made factual determinations on procedural objections.[31] On April 6, 2018, the First Circuit denied both of the state's pending writ applications.[32]

The state sought a combined writ of certiorari with the Louisiana Supreme Court on both writ applications denied by the First Circuit. The Louisiana Supreme Court granted the writ on June 18, 2018 (in pertinent part):

---

[24] R. Doc. 7-20, pp. 80-81.
[25] R. Doc. 7-20, pp. 103-134.
[26] R. Doc. 7-20, p. 142.
[27] R. Doc. 7-20, p. 145.
[28] R. Doc. 7-21, pp. 3-27.
[29] R. Doc. 7-21, pp. 29-31.
[30] R. Doc. 7-21, pp. 54-56.
[31] R. Doc. 7-21, pp. 60-86.
[32] R. Doc. 7-21, p. 58; R. Doc. 7-21, p. 1.

Granted. Defendant's complaint regarding the seating of the now-deceased juror fails to allege a claim which, if established, would entitle him to relief. La.C.Cr.P. art. 928. *See also Burton v. Johnson,* 948 F.2d 1150, 1156 (10th Cir. 1991)("A party who seeks a new trial because of non-disclosure by a juror during voir dire must show actual bias, either by express admission or proof of specific facts showing a close connection to the circumstances at hand that bias must be presumed"). In addition, defendant has failed to show the state withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Therefore, we grant the State's application to vacate the district court's ruling setting this matter for an evidentiary hearing and we remand for further proceedings consistent with this ruling.[33]

Petitioner sought rehearing, which was denied on September 21, 2018.[34]

Petitioner filed the instant application for habeas corpus relief on October 11, 2018.

Petitioner claims: (1) his Sixth Amendment rights to a fair and impartial jury were violated because Juror Mobley was biased due to her son's connection to the murder investigation, (2) his Fifth Amendment right to due process was violated because the state had actual knowledge that Juror Mobley's son had a connection to the murder investigation and engaged in prosecutorial misconduct when it failed to advise the court and the defense, (3) his Fourteenth Amendment due process rights were violated because the trial judge's improper comments during jury instructions led at least 3 jurors to believe that manslaughter was not an available responsive verdict, and (4) his trial counsel was ineffective for failing to object to inadmissible hearsay, which violated his rights under the Confrontation Clause. Petitioner also requests a federal evidentiary hearing, which is styled as Claim 5.[35]

---

[33] R Doc. 7-22, pp. 14-16.
[34] R. Doc. 7-22, pp.51-64.
[35] R. Doc. 1.

## II.    Timeliness

### A.  Legal Standard

The Antiterrorism and Effect Death Penalty Act ("AEDPA") establishes a one-year statute of limitations for the filing of federal habeas corpus applications. The method for calculating a petitioner's one-year time period is set forth in 28 U.S.C. § 2244(d)(1), which provides:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The threshold question, with respect to Petitioner's claims, is when the running of the statute of limitations commenced. Petitioner took the position with the trial court that the factual predicate for his claim regarding Juror Mobley (Claim 1) was not discovered until April 17, 2013 and the factual predicate for his claim for prosecutorial misconduct (Claim 2) was not discovered until the proceedings on his Second PCR Application in state court. Petitioner's application, therefore, raises claims that fall under § 2241(d)(1)(A), (Claim 3 and Claim 4) and claims that fall under § 2241(d)(1)(D), (Claim 1 and Claim 2).

The United States Fifth Circuit Court of Appeals has not yet directly confronted the question of when to commence the limitations period when a petitioner brings claims that fall

under different sections of 28 U.S.C. § 2244(d)(1). The United States Third Circuit Court of Appeals, which addressed this issue in *Fielder v. Varner*,[36] employs a claim-by-claim approach. In other words, the commencement date of the statute of limitations is analyzed for each claim separately and an untimely claim cannot be revived simply because it is included in a petition that also includes timely a claim. As the Third Circuit's claim-by-claim approach has been used by other district courts in this Circuit when addressing this issue,[37] that approach will be used in determining whether Petitioner's claims are timely.

### B. Claims 1 and 2, 28 U.S.C. § 2244(d)(1)(D)[38]

Petitioner took the position in his post-conviction application that he was unaware of the factual predicate for the bias claim regarding Juror Mobley (Claim 1) until April 17, 2013, which was the date his investigator interviewed Juror Mobley.[39] The trial court allowed Petitioner to proceed on this claim, overruling the state's objection to timeliness under Louisiana Code of Criminal Procedure art. 930.8.[40] The version of art. 930.8 cited by the trial judge in her opinion only required Petitioner to show that the factual predicate of his claim was unknown to him or his attorney. [41] Art. 930.8 was amended in 2014 to require that petitioners prove that the facts were unknown despite the exercise of diligence. Under Section 2244(d)(1)(D) of the AEDPA the statute of limitations may also begin on the date the "factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

---

[36] 379 F.3d 113 (3rd Cir. 2004).
[37] *Ellis v. Quarterman*, No. 07-2768, 2008 WL 2963467 (S.D. Tex. July 30, 2008); *Gonzales v. Thaler*, No. 09-0206, 2011 WL 4471018 (N.D. Tex. Sept. 9, 2011); *Maldonado v. Thaler*, 662 F. Supp. 2d 648 (S.D. Tex. Sept. 24, 2009).
[38] The timeliness of Claims 3 and 4 can be determined from the record and will be addressed in a Report and Recommendation following the evidentiary hearing.
[39] R. Doc. 7-16, pp. 65-84; 7-17, p.10.
[40] 7-17, pp. 23-26.
[41] 2013 La. Sess. Law Serv. Act 251 (H.B. 385) (WEST).

The "factual predicate" exception in § 2244(d)(1)(D) expressly requires the petitioner to exercise "due diligence" in discovering his claims. The statute of limitations begins to run under this section when the factual predicate of the claim or claims *could have* been discovered.[42] The diligence required is "reasonable diligence" not "maximum feasible diligence."[43] Additionally, the test of due diligence is objective, not subjective,[44] and allows for reasonably discoverable knowledge to be imputed to the petitioner.[45] The Fifth Circuit has recognized that "the essential question is ... whether the petitioner should be expected to take actions which would lead him to the information."[46]

Respondent did not initially raise a timeliness defense in these habeas proceedings but submitted a supplemental brief by order of the Court.[47] Respondent argues that Petitioner's federal habeas petition is untimely because his First PCR Application was improperly filed and did not toll the statute of limitations, resulting in a total of 718 untolled days.[48] Respondent does not address the fact that Claim 1 was brought in Petitioner's Second PCR Application or Petitioner's argument that the factual predicate for Claim 1 did not arise until his investigator interviewed Juror Mobley.   At the trial court level, Respondent argued that Claim 1 was untimely because the information regarding Juror Mobley should have been discovered by Petitioner's trial counsel through "open file discovery."[49]  Petitioner's original trial counsel also sent discovery requests to the prosecution on January 25, 2002.[50] Samuel Mobley's name and the law enforcement notes

---

[42] *Id.*
[43] *Mathis v. Thaler,* 616 F.3d 461, 474 (5th Cir. 2010).
[44] *Starns v. Andrews,* 524 F .3d 612, 618 (5th Cir. 2008) (citing *Wood v. Spencer,* 487 F.3d 1, 5 (1st Cir.2007)).
[45] *Id.*
[46] *Starns,* 524 F.3d at 618 (citing *Wilson v. Beard,* 426 F.3d 653, 662 (3d Cir. 2005)).
[47] R. Doc. 14; R. Doc. 15.
[48] R. Doc. 15.
[49] R. Doc. 7-20, p.116.
[50] R. Doc. 7, pp. 63 through R. Doc. 7-1, pp.8.

regarding Samuel Mobley were directly responsive to at least five questions posed in the discovery

requests:

> 33)    Identify all persons who have given any oral statement to any representative of any law enforcement or prosecuting authority in connection with this case.[51]

> 35)    Identify all persons who have been contacted by any representative of law enforcement or prosecuting authority for the purpose of securing or confirming any information in connection with this case.[52]

> 42)    Identify all persons who in connection with this matter or the investigation of it:
> (d) Have been sought, for purposes of possible arrest or detention, by any representatives of any law enforcement or prosecuting authority.[53]

> 63)    The defendant moves the court to order the State and the Police Authority herein concerned to deliver to the defense a list of names, birth dates, and addresses of all of the people interviewed or contacted relative to this matter whether or not the State intends to use such people or witnesses and whether or not such people gave statements.[54]

> 65)    State names and addresses of all persons who have been suggested, suspected, implicated, accused, questioned, investigated, booked, arrested, charged, indicted, or who have confessed to the alleged crimes herein.[55]

The record does not contain the state's written response to discovery, any objections, or any list of

the items produced to Petitioner.

During the November 2, 2017 evidentiary hearing, the trial judge asked the state whether

the documents regarding Samuel Mobley were produced in discovery.[56] The prosecutor never

directly answered the question but stated that "defense counsel may have been aware of it."[57]

---

[51] R. Doc. 7, p. 79.
[52] R. Doc. 7, p. 79.
[53] R. Doc. 7, p. 81.
[54] R. Doc. 7-1, p. 3.
[55] R. Doc. 7-1, p. 3.
[56] R. Doc. 7-20, p.38
[57] R. Doc. 7-20, p.38

Petitioner's trial counsel then advised the court that he was "definitively" not aware that Samuel Mobley had been questioned by the police.[58] Petitioner's counsel then moved for the state to produce whatever information they had in their file regarding the search of Juror Mobley's home.[59]

The judge ordered the state to produce the documents, which Petitioner received on December 4, 2017.[60] Petitioner amended his Second PCR Application ten days later, on December 14, 2017, to assert a claim of prosecutorial misconduct.[61] At the January 16, 2018 hearing on the state's procedural objections, Petitioner's counsel represented to the court that the defense did not have the documents regarding Samuel Mobley prior to jury selection.[62] The prosecution argued that the information was provided during the trial through open file discovery.[63] The state court never made any factual findings because Petitioner's case was dismissed by the Louisiana Supreme Court mid-proceedings.

The question of whether Petitioner *could have* discovered earlier (with due diligence) the factual basis of Claim 1 and Claim 2 turns on a factual finding of whether the prosecution produced information about Samuel Mobley in pre-trial discovery or not.  Because the state's written response to Petitioner's discovery requests is not in the record, this fact cannot be determined on the face of the state court record. If the information was not produced in pre-trial discovery by the prosecution in response to questions that should have elicited production, it would not appear that Petitioner had any way of knowing that a claim existed until Juror Mobley told his investigator that her son was questioned by law enforcement when she was interviewed on April 17, 2013.

---

[58] R. Doc. 7-20, p.38
[59] R. Doc. 7-20, p. 40.
[60] R. Doc. 1-26, pp. 1-5.
[61] R. Doc. 7-20, pp. 63-69.
[62] R. Doc. 7-20, p. 120.
[63] R. Doc. 7-20, p.116.

Petitioner filed the Second PCR Application related to Claims 1 and 2 on June 4, 2013—less than two months later.

Although timeliness cannot be determined from the state court record at this juncture, in order to proceed with an evidentiary hearing on a claim that was adjudicated on the merits by a state court, a petitioner must show that the state court decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    Where, as here, there was a summary denial of the petitioner's claims, the "unreasonable application" test can be satisfied "only by showing 'that there was no reasonable basis'" for the state court decision.[64]  Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.[65]  Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.[66]  Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.[67]  State court determinations of underlying factual issues are presumed to be

---

[64] *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011).
[65] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).
[66] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).
[67] *Id*.  *See also Williams*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").

correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[68]

### III.    An Evidentiary Hearing is Warranted as to the Timeliness of Claims 1 and 2

#### A.   Claim 1: Juror Bias

Petitioner asserts that Juror Mobley's actual and/or implied bias denied him his Sixth Amendment right to a fair and impartial jury. Specifically, Petitioner contends that Juror Mobley was biased because her son, Samuel Mobley, could have been a potential victim of the murder because he worked at the store where the murder occurred, the store owner provided Samuel Mobley's name as a potential suspect to the police, Samuel Mobley was read his rights and questioned by the police about the murder, Samuel Mobley's father's house was searched during the investigation, and Juror Mobley's house was searched during the investigation. Petitioner contends that Juror Mobley was motivated to protect her son, as evidenced by the fact that she remained silent during voir dire about her son's connection to the investigation when the panel was asked if they had heard or read anything about the murder.

Respondent asserts that Petitioner cannot establish bias because Juror Mobley is deceased and his claims are based on "nothing but supposition."[69] Respondent also asks the Court to defer to the Louisiana Supreme Court, who "applied clearly established federal law and found that the facts regarding the seating of Ms. Mobley as a juror alleged in petitioner's pleadings together with the testimony of Sam Mobley even if proven would not entitle him to the relief sought."[70]

The Louisiana's Supreme Court's ruling was contrary to clearly established federal law. The Sixth Amendment to the federal Constitution requires, "In all criminal prosecutions, the

---

[68] 28 U.S.C. § 2254(e)(1).
[69] R. Doc. 6, p. 25.
[70] R. Doc. 6, p. 25

accused shall enjoy the right to a speedy and public trial, by an *impartial jury* of the State and district wherein the crime shall have been committed" (emphasis added). The importance of the impartiality requirement cannot be overstated; even before the Supreme Court recognized that the Sixth Amendment was incorporated against the states, the Court held that the Due Process clause of the Fourteenth Amendment "independently required the impartiality of any jury empaneled to try a cause."[71] An impartial jury is the "surest means of protecting the accused against an unjust conviction," and the state must provide means of "securing juror impartiality in criminal cases.... Between [the accused] and the state, the scales are to be evenly held."[72]

> As stated by the Fifth Circuit Court of Appeals,

> > Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decision maker....The Supreme Court has unfailingly protected the jury room from juror bias in a variety of contexts ... and this is consistent with the Court's long-held view that the impartial jury is *critical* in determining guilt and punishment.[73]

Given the importance of juror impartiality, our system of justice requires that counsel for the accused, the prosecution, and the trial court preserve and uphold this right. The trial court cannot abdicate its responsibility to prevent or remedy circumstances that would compromise the integrity of a jury.[74]

> In order to satisfy this fundamental standard of impartiality, jurors must be able to "conscientiously and properly carry out their sworn duty to apply the law to the facts of the

---

[71] *Morgan v. Illinois,* 504 U.S. 719 (1992) (discussing *Duncan v. Louisiana,* 391 U.S. 145 (1968), *Turner v. Louisiana,* 379 U.S. 466 (1965), and *Irvin v. Dowd,* 366 U.S. 717 (1961)).
[72] *Hayes v. Missouri,* 120 U.S. 68, 70 (1887).
[73] *Virgil v. Dretke,* 446 F.3d 598, 605 (5th Cir.2006) (emphasis added).
[74] *Smith v. Phillips,* 455 U.S. 209, 217 (1982) ( "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen").

particular case."[75] But where a potential juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," then he is biased and he cannot constitutionally serve on a jury.[76]

Clearly established federal law provides relief for both actual and implied juror bias. Petitioner's Second PCR Application stated a claim for relief under both theories.[77] Actual bias can be shown through admission or factual proof and "exists when a juror fails to answer a material question accurately because he is biased."[78] "T[he United States Supreme Court] has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."[79]

Petitioner alleges that Juror Mobley was actually biased due to her silence during voir dire. Specifically, Petitioner points to Juror Mobley's response to the question of whether she had heard or read about the murder at Delaune's Supermarket:

> I just—I don't even remember what all I read, but I did read it in the newspaper, what had happened, and the news on TV, but, you know, I haven't—you know, I couldn't have formed an opinion.[80]

While this Report does not address whether Petitioner will ultimately be able to meet his burden of proof on actual bias due to the death of Juror Mobley, Petitioner has stated a claim for actual

---

[75] *Lockhart v. McCree,* 476 U.S. 162 (1986).

[76] *Soria v. Johnson,* 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt,* 469 U.S. 412 (1985)).

[77] This Order and Reasons addresses only the merits of Petitioner's claims to the extent necessary to determine whether the requirements of *Pinholster* are met to permit an evidentiary hearing. This is not a full determination on the merits of Petitioner's claims.

[78] *United States v. Thomas,* 627 F.3d 146, 161 (5th Cir. 2010) (quoting *United States v. Bishop,* 264 F.3d 535, 554 (5th Cir. 2001); *see also, McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548,556 (1984) (to obtain a new trial based on juror bias, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause").

[79] *Smith v. Phillips,* 455 U.S. 209, 215 (1982).

[80] R. Doc. 7-5, p.112.

juror bias.[81]  It appears that Juror Mobley failed to answer a material question honestly during voir dire and the correct response (that she was aware of the murder because her son had been questioned, and her home searched, in connection with the investigation) may have provided a basis to challenge her for cause.[82] The Louisiana Supreme Court's decision dismissing the claim without any factual determinations was contrary to clearly established federal law.

The landmark United States Supreme Court case addressing the implied bias doctrine is *Smith v. Phillips.*[83] In *Smith,* "the Court ... held that in most cases the remedy for claims of juror bias is a post-event hearing, in which the trial judge can examine the juror and obtain assurances that, despite the event leading to the claim of bias, the person is able to continue serving as an impartial juror."[84] However, in an oft-cited concurring opinion in *Smith,* Justice O'Connor expressed her concern that there may be certain situations in which "a hearing may be inadequate for uncovering a juror's biases, leaving serious question whether the trial court had subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice."[85] Justice O'Connor stated:

> While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction. Whether or not the state proceedings result in a finding of "no bias," the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.[86]

---

[81] Any evidentiary objections associated with Petitioner's actual bias claim may be raised at the evidentiary hearing ordered herein.
[82] La.C.Cr.P. Art. 797; *State v. Conklin*, 2018-0718 (La. App. 1 Cir. 2/28/19), 274 So.3d 375 (Challenge for cause should be granted, even if the juror declares an ability to remain impartial, when the juror's responses reveal facts from which bias, prejudice, or impartiality may be reasonably inferred.)
[83] 455 U.S. 209 (1982).
[84] *Brooks v. Dretke,* 444 F.3d 328 (5th Cir. 2006).
[85] *Smith,* 455 U.S. at 222.
[86] *Id*.

Based on Justice O'Connor's concurrence, the Fifth Circuit has made clear that the implied bias doctrine is "clearly established Federal law as determined by the Supreme Court."[87] Therefore, the key inquiry in a case involving a claim of implied juror bias is "'whether [the juror's] conduct is of the genre of cases Justice O'Connor pointed to in ... *Phillips*: juror conduct not salvageable by post event hearings.'"[88] However, as the Fifth Circuit has stated, "[t]he implied bias doctrine neither starts [nor] ends with the Supreme Court's decision in *Smith*."[89] Although Justice O'Connor's opinion is illustrative of the circumstances in which implied juror bias may be found, there is no definitive test and the inquiry is fact-specific. The Fifth Circuit described the cogent factors for determining implied bias in *Solis v. Cockrell*:[90]

> Looking to other cases embracing the implied bias doctrine, we find that most have done so because the juror had a close relationship with one of the important actors in the case or was otherwise emotionally involved in the case, usually because the juror was the victim of a similar crime. Noting this delineation some courts have cautioned that bias should not be inferred unless the facts underlying the alleged bias are such that they "would inherently create in a juror a substantial emotional involvement, adversely affecting impartiality." In such cases a defendant may show that a trial court's attempts to determine whether the juror is actually biased inadequately protect the defendant's right to a fair trial, because the allegedly prejudicial circumstances may be affecting the juror in ways the juror may not realize or may cause the juror to knowingly withhold the truth from the inquiring court.

Turning to the case at hand, the decisive question based on implied bias precedent is whether Juror Mobley "had a close relationship with one of the important actors in the case," or

---

[87] *Brooks,* 444 F.3d at 329.
[88] *Id.* at 330. (quoting *Brooks v. Dretke,* 418 F.3d 430, 434 (5th Cir.2005)).
[89] *Id.* (alteration in original).
[90] 342 F.3d 392

the facts underlying her alleged implied bias are such that they "would inherently create…a substantial emotional involvement, adversely affecting impartiality."

The factual assertions set forth by Petitioner regarding Juror Mobley are sufficient to state a claim for implied juror bias. Petitioner alleges that Juror Mobley's son, Samuel Mobley, was read his *Miranda* rights and questioned by the police as a potential suspect in the murder. Petitioner further alleges that police questioned Samuel Mobley about guns and weapons. According to police notes, Samuel Mobley identified his mother as Gladys Mobley and provided police with her address. It also appears, according to police notes, that the owner of the grocery store identified Sam Mobley as a potential suspect in the murder because he had been a suspected shoplifter at the store. The police searched the home Samuel Mobley shared with his father, as well as the home Samuel Mobley shared with Juror Mobley. Samuel Mobley testified at the state court evidentiary hearing that he was not present when his mother's home was searched but his mother told him about it.

The facts underlying Juror Mobley's alleged bias are the type of facts that could inherently create a substantial emotional involvement in the case. The defendant's alleged actions led to a police search of her home and caused her son to be suspected of murder, at least for a time. Juror Mobley's son was read his rights and subjected to police interrogation. Under these circumstances, there could have been an incentive for Juror Mobley to convict the defendant, either consciously or unconsciously, in order to definitively clear her son of any suspected involvement in the crime and/or to account for the collateral damage the defendant's alleged actions caused her family.

As Petitioner's allegations also state a claim for implied bias, the Louisiana Supreme Court's decision dismissing Petitioner's claim for failure to state a claim was contrary to clearly established federal law. The state courts never made any findings of fact about the timeliness of

Petitioner's claim or Respondent's assertion that the claim was untimely because the information regarding Juror Mobley was either known by or could have been discovered by counsel at an earlier date. Accordingly, an evidentiary hearing is necessary to determine the timeliness of Claim 1 under the AEDPA. As discussed above, the evidentiary hearing conducted during the post-conviction review at the trial court was ended mid-proceeding. For the purpose of efficiency, the merits of Claim 1 will also be heard at the evidentiary hearing. [91]

### B.  Claim 2: Prosecutorial Misconduct

In Claim 2, Petitioner contends that prosecutorial misconduct violated his due process rights. Petitioner alleges that the state knew during voir dire that Juror Mobley's son had a connection to the murder investigation and failed to disclose this information to the defense or the trial court.[92] This claim, brought by Petitioner in an amendment to his Second PCR Application, was dismissed by the Louisiana Supreme Court, which held:

> "…defendant failed to show the state withheld exculpatory evidence in violation of *Brady v. Maryland*. Therefore, we grant the State's application to vacate the district court's ruling setting this matter for evidentiary hearing and we remand for further proceedings consistent with this ruling."[93]

---

[91] Both Petitioner and Respondents dedicate their briefing on the issue of an evidentiary hearing to a discussion of the United States Supreme Court case *Cullen v. Pinholster*, 563 U.S. 170 (2011), and its restrictions on federal habeas corpus evidentiary hearings. However, when a district court concludes that the state court's decision is contrary to or an unreasonable application of clearly established federal law solely based on the state court record, *Pinholster* is inapplicable. *Smith v. Cain*, 708 F.3d 628, 634-35 (5th Cir. 2013). The Court is also not constrained by the language of 28 U.S.C. § 2254 in holding an evidentiary hearing. § 2254(e)(2) prohibits an evidentiary hearing (with certain exceptions) when the Petitioner "failed to develop the factual basis of the claim in State court proceedings." The phrase "failed to develop" means "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Austin v. Davis*, 876 F.3d 757, 798-99 (5th Cir. 2017). Here, Petitioner did not fail to develop the factual basis of the claim in the state court proceedings. As shown by the extensive procedural history of the post-conviction proceedings, Petitioner was diligent, if not aggressive, in his attempts to develop the factual basis of this claim. The Petitioner's efforts were ended when the Louisiana Supreme Court dismissed his application for failure to state a claim.

[92] R. Doc. 1, pp. 20-21.

[93] R. Doc. 7-22, p.15 (internal citations omitted).

Petitioner argues that the Louisiana Supreme Court's decision is contrary to federal law because his prosecutorial misconduct claim does not implicate *Brady*. While a prosecutorial misconduct claim of this nature does not implicate *Brady*,[94] the AEDPA requires the Court to review the Louisiana Supreme Court's ultimate decision, and not necessarily its legal reasoning.[95] The question then becomes whether the Louisiana Supreme Court's summary dismissal was warranted under clearly established federal law.

In *Williams v. Taylor*, *supra*, Michael Wayne Williams sought habeas relief from his convictions for two capital murders. His claims asserted, *inter alia*, that a juror failed to disclose that she was once married to a law enforcement prosecution witness and the prosecutor failed to disclose to the court that he was aware of the juror's relationship to the witness because he had served as the juror's attorney in her divorce proceedings. The district court ordered an evidentiary hearing on these claims. The Fourth Circuit Court of Appeal reversed, finding that Williams failed to develop the factual basis of the claim in state court and was prohibited from an evidentiary hearing based on the statutory language of the AEDPA.

The United States Supreme Court granted certiorari to address whether the Fourth Circuit had correctly interpreted AEDPA's statutory language restricting evidentiary hearings. The Supreme Court addressed the meaning of the clause in 28 U.S.C. §2254(e)(2) "failed to develop the factual basis of a claim in State court proceedings," and held that the clause is not triggered unless "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."[96] In discussing Williams' claims, the Supreme Court stated that the juror's failure to

---

[94] *See Smith v. Phillips*, 455 U.S. 209, 219-221 (failure to disclose evidence of potential juror bias is not a *Brady* violation, but implicates prosecutorial misconduct, which must rise to a level of a constitutional violation to justify a new trial).

[95] *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

[96] *Id*. at 432.

divulge material information and prosecutor's silence during voir dire established the need for an evidentiary hearing.[97] The Supreme Court found that Williams could establish his claim for prosecutorial misconduct during an evidentiary hearing by proving that "[the prosecutor's] silence so infected the trial as to deny due process," citing its precedent on prosecutorial misconduct claims, *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).[98] The Supreme Court then remanded to the district court for an evidentiary hearing.

After an evidentiary hearing was conducted on remand, the district court granted habeas relief on Williams' juror bias and prosecutorial misconduct claims.[99] Based on findings of fact from that hearing, the district court concluded that the juror was not a fair and impartial and that the prosecutor's "silence affected Williams' fundamental constitutional right to an impartial jury and denied him due process of law."[100] The Fourth Circuit affirmed on appeal.[101]

Accordingly, prosecutorial misconduct for failure to disclose known juror bias has been recognized by the United States Supreme Court as implicating the right to a fair and impartial jury and due process. Petitioner asserted his prosecutorial misconduct due process claim in his Second PCR Application. Therein, Petitioner cited the standard for prosecutorial misconduct set forth in *Donnelly v. DeChristoforo*, which is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[102] Petitioner's due process claim was before the Louisiana Supreme Court when it granted the state's writ. The Louisiana Supreme Court's ultimate decision summarily dismissing the petitioner's prosecutorial misconduct claim

---

[97] *Id.* at 442.
[98] *Id.*
[99] *Williams v. Netherland*, 181 F.Supp.2d 604 (E.D. Va. Jan. 24, 2002).
[100] *Id.* at 618.
[101] *Williams v. True*, 39 F.Appx. 830 (4th Cir. 2002).
[102] 416 U.S. 637 (1974).

was contrary to clearly established federal law because even though the claim does not implicate *Brady*, it does implicate the constitutional right to an impartial jury and to due process protections.

Petitioner stated a claim for prosecutorial misconduct in Claim 2, but the state court never concluded the evidentiary hearing on this issue or made any factual findings from which this Court can determine the timeliness of the claim under the AEDPA. Accordingly, an evidentiary hearing is also necessary to determine the timeliness of Claim 2. For the purpose of efficiency, the merits of Claim 2 will also be heard at the evidentiary hearing.[103]

**IV.    Conclusion**

Because the Louisiana Supreme Court's summary dismissal of Claim 1 and Claim 2 was contrary to clearly established federal law, an evidentiary hearing is warranted in this case. As fact issues preclude a determination from the record of the timeliness of these claims, evidence will be taken as to timeliness. For efficiency, evidence will also be taken as to the merits of Claim 1 and Claim 2, although the merits of the claims will only be addressed if the claims are timely. Prior to the hearing, the parties will exchange witness and exhibit lists and a pre-hearing Zoom conference will be held.

**IT IS ORDERED** that an evidentiary hearing as to the timeliness and merits of Petitioner's Claim 1 and Claim 2 will be held before Magistrate Judge Erin Wilder-Doomes[104] on **April 6, 2021 at 10:00 a.m.** via Zoom videoconference. Participant instructions are attached.

**IT IS FURTHER ORDERED** that the parties will file exhibit and witness lists by no than **February 3, 2021**.

---

[103] An evidentiary hearing is permissible on the merits of Claim 2 for the same reasons discussed in fn. 91.

[104] This matter was referred to the magistrate judge for the issuance of proposed findings of fact and a recommendation for disposition, including conducting any evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B).

**IT IS FURTHER ORDERED** that a pre-hearing Zoom conference will be held with before Magistrate Judge Erin Wilder-Doomes on **February 12, 2021 at 10:00 a.m.** Participant instructions are attached.

Signed in Baton Rouge, Louisiana, on December 30, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

23