# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUSTIN GRANIER | CIVIL ACTION |
| VERSUS | |
| DARREL VANNOY, ET AL. | NO. 18-00901-BAJ-EWD |

## RULING AND ORDER

Petitioner is an inmate, presently incarcerated at the Louisiana State Penitentiary. Petitioner's incarceration is the result of a jury verdict rendered in October 2003, finding him guilty of one count of second-degree murder.

On October 11, 2018, after various attempts to overturn his conviction in state court proved unsuccessful, Petitioner initiated this habeas proceeding seeking to vacate his conviction and sentence under 28 U.S.C. § 2254. (Doc. 1). Petitioner's counseled habeas petition alleges four claims for relief:

    Claim 1: Juror bias in violation Petitioner's Sixth Amendment right to an impartial jury, based on newly discovered evidence showing that Petitioner's jury included a woman (Gladys Delaune Mobley) whose son (Sam Mobley) was questioned by Ascension Parish Sheriff's Deputy Mike Toney in connection with the murder for which Petitioner was convicted, (Doc. 1 at pp. 15-20);

    Claim 2: Prosecutorial misconduct in violation of Petitioner's Fifth Amendment right to due process, based on newly discovered evidence showing that the state withheld records evidencing Deputy Toney's interview of Juror Mobley's son, and the state's failure to correct Juror Mobley when, at *voir dire*, she did not disclose Deputy Toney's interview of her son, (*id.* at pp. 20-23);

    Claim 3: Improper jury instruction in violation of Petitioner's Fourteenth Amendment right to procedural due process, based on a jury instruction that allegedly caused the jury to believe that it could not convict Petitioner of the lesser offense of manslaughter, (*id.* at pp. 23-28); *and*

    Claim 4: Ineffective assistance of counsel in violation of Petitioner's

Sixth Amendment right to effective counsel, based on trial counsel's failure to move for a mistrial after the state elected not to call Petitioner's co-conspirators as witnesses despite having promised such witnesses in its opening statement, and for having failed to object to hearsay testimony regarding what these co-conspirator witnesses told law enforcement investigating the murder, (*id.* at pp. 28-31).

On April 28, 2021, the Magistrate Judge conducted an evidentiary hearing as to the timeliness of Claims 1 and 2. For efficiency, the Magistrate Judge also received evidence on the merits of Claims 1 and 2. (*See* Doc. 20; Doc. 45; Doc. 48).

On March 11, 2022, the Magistrate Judge issued a **Report and Recommendation (Doc. 52, the "R&R")**, recommending that Petitioner's habeas application be deemed timely but fails on the merits, and, further, that the Court should deny Petitioner a certificate of appealability (COA). The State does not object to the R&R; Petitioner objects to dismissal of his claims, and to denial of a COA. (Doc. 81).

Upon *de novo* review of Petitioner's habeas application and related papers submitted in this Court, the underlying state court record, and the evidence developed in state court *and* in these federal proceedings, the Court approves and will adopt substantially *all* of the R&R as its opinion in this matter, as set forth herein.

First, having carefully considered the matter, and in the absence of any objection, the Court approves the R&R's analysis of the timeliness of Petitioner's claims, and adopts that analysis as the Court's opinion herein. The State's procedural objection is overruled.

Second, the Court also approves the R&R's analysis of the merits of Claim 3

(improper jury instruction) and Claim 4 (ineffective assistance of counsel), and adopts that analysis as the Court's opinion herein. Petitioner offers a blanket objection to dismissal of these claims, but fails to offer any argument or authorities in support of his objection. Under this Court's Local Rules, issues not briefed are waived. *See* M.D. La. LR 7(d); *Spell v. Edwards*, No. 20-cv-00282, 2022 WL 131249, at *13 n. 7 (M.D. La. Jan. 12, 2022) (Jackson, J.); *Gray v. City of Denham Springs*, No. 19-cv-00889, 2021 WL 1187076, at *5 (M.D. La. Mar. 29, 2021) (Jackson, J.). Claims 3 and 4 are dismissed with prejudice, and the Court will not issue a COA as to these claims.

Third, over Petitioner's objection, the Court approves the R&R's analysis of the merits of Claims 1 and 2, and adopts that analysis as the Court's opinion herein, as supplemented below:

Upon *de novo* review of the evidence developed in state court *and* in these federal proceedings, four facts are inescapable: (1) Juror Mobley sat on the jury that convicted Petitioner of second degree murder in October 2003; (2) two years earlier, Sam Mobley, Juror Mobley's son, was interviewed by Ascension Parish Sheriff's Deputy Mike Toney as a possible suspect at the earliest stages of the murder investigation that ultimately resulted in Petitioner's conviction; (3) Juror Mobley did not divulge that her son was interviewed when questioned at *voir dire* regarding her knowledge of and connection to Petitioner's case; and (4) Deputy Toney's investigation notes were among the papers in the state's file, but were never disclosed to Petitioner, and were not divulged by the state after Juror Mobley's *voir dire* answers failed to reveal her son's involvement in Petitioner's case.

Putting it mildly, these facts are troubling. Further, they easily form the basis of a claim of juror bias, and a related claim of prosecutorial misconduct, *assuming* that Juror Mobley *knew* her son was questioned by Deputy Toney. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 420, 440 (2000) (juror's failure to divulge that she was previously married to a detective that investigated the petitioner's state court case *and* that she retained one of the state's attorneys in her divorce formed the basis of a claim of juror bias, and a related claim of prosecutorial misconduct, requiring evidentiary development).

The problem for Petitioner is that after full and fair evidentiary development, the evidence does *not* support Petitioner's assumption that Juror Mobley knew her son was questioned during the murder investigation. In fact the weight of the evidence suggests the opposite: that Juror Mobley was unaware of her son's involvement in the murder investigation when she sat on Petitioner's jury.[1]

First, the transcript of Petitioner's trial shows that Juror Mobley was forthcoming throughout the *voir dire* process, raising her hand in response to questions directed at the venire generally, and volunteering (1) she was cousins with one state's witness (Major Benny Delaune) and went to school with another (Sherriff Jeff Wiley) (Doc. 7-5 at p. 53); (2) she had previously served as an alternate juror in a criminal case (*id.* at pp. 59-60); and (3) she had read about Petitioner's crime in the newspaper and heard about it on "the news on TV," (*id.* at p. 112). Given her candor,

---

[1] Of course there is no direct evidence of Juror Mobley's knowledge because she is now deceased, and never provided any evidence of her knowledge prior to her death, even when confronted by Petitioner's investigator (as will be discussed below).

4

it stands to reason that Juror Mobley would have also disclosed that her son was interviewed as a potential suspect in Petitioner's crime, had she known this fact. By contrast, a biased juror seeking to hide her ties to the case would not be expected to voluntarily raise her hand in response to generally directed questions; instead she would merely sit silently. *E.g.*, *Williams*, *supra*, 529 U.S. at 440-41 (juror's silence in response to generalized questions seeking information regarding relationships with state's witnesses and state's attorneys established predicate for juror bias claim).

Second, the affidavit of Petitioner's investigator, Brad Scott, who interviewed Juror Mobley in person at her home in April 2013, recalls only that "Ms. Mobley informed me that approximately (1) week before the September 15, 2001 shooting death of Luke Villar, her son Sam Mobley quit his employment at Delaune's Supermarket," and that "[d]uring the course of our interview, Ms. Mobley repeatedly stated '[i]t could have been my son' or words to that effect referring to her son's employment at the scene of the crime and similar age to the victim." (Doc. 7-17 at p. 10 (¶¶ 5, 8)). Mr. Scott's affidavit also states that "[s]ometime after the shooting, law enforcement officers questioned Sam [Mobley] at his home on Laurel Ridge Road in St. Amant about his involvement and/or knowledge pertinent to the investigation." (*Id.* (¶7)). Significantly, however, this latter statement (regarding the investigation of Sam Mobley) reflects Mr. Scott's *own* knowledge, *not* Juror Mobley's. (*Id.*). In other words, absent from Mr. Scott's carefully-crafted affidavit is *any* indication that Juror Mobley knew of her son's connection to the crime scene or to the murder investigation at the time she sat on Petitioner's jury. Logically, when he interviewed Juror Mobley

5

in 2013, Mr. Scott would have questioned her about such knowledge. Had Juror Mobley's answers provided any indication (or reason to believe) that she knew of her son's involvement when she judged Petitioner's guilt, certainly Mr. Scott would have included that information in his affidavit. Tellingly, Mr. Scott was not a called as a witness at Petitioner's April 28, 2021 evidentiary hearing before the Magistrate Judge. (*See generally* Doc. 48).

Third, the only evidence that Juror Mobley knew of her son's interview with Deputy Toney is Sam Mobley's testimony at the November 2, 2017 state court evidentiary hearing. But this evidence is tenuous at best. As an initial matter, Mr. Mobley's actual testimony is imprecise, equivocal, and even contradictory regarding what Juror Mobley knew and when she knew it, and falls far short of a firm declaration that Juror Mobley actually knew of her son's involvement when she sat on Petitioner's jury. (Doc. 7-20 at pp. 18-20).[2] Additionally, Mr. Mobley's most

---

[2] On the dispositive issue of Juror Mobley's knowledge, Mr. Mobley's testimony proceeds, in full:

> EXAMINATION BY THE COURT:
> Q. Mr. Mobley, did you speak with your mom on a – I know you were living with your grandmother. Did you see your mom on a regular basis back then?
> A. Not – not really, no. No, ma'am.
> Q. So, how often would you have seen her?
> A. Oh, like we – once every six –
> Q. Did you see your mom ever whenever [sic] you were living with your grandmother?
> A. Oh, one – once every six months.
> Q. Okay.
> A. I'd go visit her.
> Q. Okay. And do you know how your mom would have known that the police went there [to Mr. Mobley's house]?
> A. I think they had stopped – went – they went to Prairieville and looked, too, and I wasn't there. I was down in St. Amant.
> Q. So, you think they went to her house first and then went to St. Amant?

6

incendiary allegation—that Deputy Toney searched Juror Mobley's house before (or after) interviewing Mr. Mobley—is flatly contradicted by Deputy Toney himself, who appeared at the April 28, 2021 evidentiary hearing and testified that he never went to Juror Mobley's home (or obtained a warrant to search it), and never spoke to Juror Mobley. (Doc. 48 at p. 150). Deputy Toney's supervisor, Major Benjamin "Benny" Delaune, corroborated Deputy Toney's account, stating that he would have known if a search warrant was issued for Juror Mobley's home because "[t]hat was my uncle's address."[3] (Doc. 48 at p. 160). Finally, Mr. Mobley also was not called as a witness at the April 28 evidentiary hearing, depriving this Court of the opportunity to make a

---

> A. Somewhat, yeah, something like that. I remember something like that, yeah.
> Q. And what makes you think that?
> A. I just – talking to my mom.
> Q. All right.
> …
> REDIRECT EXAMINATION BY MR. HARRELL:
> Q. Sam, … The judge asked, "What made you think that they went to your mother's place in Prairieville?" and you answer was what?
> A. That they – they showed up in Prairieville, too. That's –
> Q. Okay.
> A. ..what they said, you know.
> Q. Is that something that –
> A. The officers, yeah.
> Q. The officers told you that?
> A. No, my Mom let me know.
> Q. Okay.
> …
> RECROSS-EXAMINATION BY MR. LONG:
> Q. You don't know when your mom told you that, huh?
> A. Not really, no.
> Q. Okay.

(Doc. 7-20 at pp. 19-20).

[3] As is evident from Major Delaune's testimony, he is the same "Benny Delaune" that Juror Mobley revealed to be her cousin at *voir dire*. (*See* Doc. 7-5 at p. 53).

7

credibility determination. (*See* Doc. 48). Yet, the transcript of Mr. Mobley's testimony is patently clear that the state court harbored serious reservations regarding Mr. Mobley's mental state and competency, particularly in light of the fact that Mr. Mobley suffers from schizophrenia, and in 2011 was "declared incompetent to stand trial and … did not appear to be able to be restored in the foreseeable future." (Doc. 7-19 at p. 127). Ultimately, the state court allowed Mr. Mobley's examination to proceed, but noted Mr. Mobley's "limitations." (Doc. 7-19 at p. 133). These "limitations"—which are evident even on the face of the cold transcript—have also factored into the Court's determination that Mr. Mobley's account of his involvement in the murder investigation—and, by extension, Juror Mobley's knowledge of the same—is "unreliable." (*See* Doc. 52 at p. 22).

In sum, for the reasons set forth in the R&R, as supplemented herein, Petitioner has not established that Juror Mobley knew of her son's involvement in the murder investigation, and thus cannot carry his burden of showing that Juror Mobley harbored actual or implicit bias when she served on Petitioner's jury. Accordingly, Petitioner's juror bias claim (Claim 1) fails.

Likewise, because Petitioner cannot show that Juror Mobley knew of her son's involvement, Petitioner also cannot show that he was prejudiced by the state's failure to disclose Deputy Toney's investigation notes of the Sam Mobley interview, *or* the state's failure to confront Juror Mobley regarding the Sam Mobley interview at *voir dire*, and any constitutional error arising from these failures "was harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a

8

federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). Accordingly, Petitioner's prosecutorial misconduct claim (Claim 2) also fails.

Still, however, the Court acknowledges that jurists of reason could disagree with its analysis of Claims 1 and 2, or (at least) would "conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005). Accordingly, the Court will *not* adopt that portion of the R&R that recommends denying a COA as to Claims 1 and 2. Rather, having determining that Petitioner has made a "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court shall issue a certificate of appealability as to Claims 1 and 2.

In sum, having carefully considered the matter, the Court **APPROVES IN PART** the Magistrate Judge's **Report and Recommendation (Doc. 52)** and **ADOPTS** it as the Court's opinion as set forth herein.

Accordingly,

**IT IS ORDERED** that Petitioner's application for habeas corpus relief be and is hereby **DENIED**, and that the above captioned action be and is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 2253(c), a certificate of appealability be and is hereby issued as to the following claims:

> Claim 1: Juror bias in violation Petitioner's Sixth Amendment right to an impartial jury, based on newly discovered evidence showing that Petitioner's jury included a woman (Gladys Delaune Mobley) whose son (Sam Mobley) was questioned by Ascension Parish Sheriff's Deputy Mike Toney in

9

connection with the murder for which Petitioner was convicted, (Doc. 1 at pp. 15-20);

      Claim 2: Prosecutorial misconduct in violation of Petitioner's Fifth Amendment right to due process, based on newly discovered evidence showing that the state withheld records evidencing Deputy Toney's interview of Juror Mobley's son, and the state's failure to correct Juror Mobley when, at *voir dire*, she did not disclose Deputy Toney's interview of her son, (*id.* at pp. 20-23);

Judgement shall issue separately.

      Baton Rouge, Louisiana, this 31st day of March, 2022

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**